# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| LEROY RAGHUNATH, | ) |
| | ) Cause No. 1:20-cv-1607 |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ELI LILLY AND COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff Leroy Raghunath, by counsel, complaining of Defendant Eli Lilly and Company and states to this Court as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

2. The acts and omissions of Defendant giving rise to this action occurred in Marion County, Indiana, within the Southern District of Indiana making venue proper in this judicial district under 28 U.S.C. § 1391.

## THE PARTIES

3. Plaintiff Leroy Raghunath ("Raghunath") is an individual and resides in Marion County, Indiana.

4. Defendant Eli Lilly and Company (hereinafter "Lilly") is a Domestic For-Profit Corporation with a principal location in Marion County, Indiana.

## FACTUAL ALLEGATIONS

5. Raghunath is a male, born in England, with Guyanese parents and Indian heritage. Raghunath is culturally British, American, Guyanese, Indian, Asian, African American, and Black.

6. In September 2002, Raghunath began employment at Lilly as a Commissioning and Qualification Specialist/Engineer.

7. Lilly maintained a pattern of discriminatory practices directed against Raghunath during his close to twenty (20) years of employment with Lilly.

8. During his employment with Lilly, Raghunath worked in Global Facilities Delivery ("GFD").

9. While employed at Lilly, Raghunath suffered from multiple health issues, including Cholinergic Urticaria, chronic shoulder issues, hearing loss, a large growth on his head which required surgical removal, severe ankle injury which required surgery, environmental allergies (including dust mites), ruptured right bicep, partially ruptured left bicep, upper back injury which required surgery (C5/C6 Fusion), and a lower back injury which requires therapy and which has never healed.

10. Cholinergic Urticaria is a health condition related to core temperature which causes discomfort, hives and inflammation in response to stress and heated environments. There is no cure or pharmaceutical treatment.

11. Raghunath began suffering from Cholinergic Urticaria prior to his employment at Lilly.

12. Raghunath suffers from environmental allergies, including allergies to dust mites after his employment at Lilly.

13. The workstations where Lilly has assigned Raghunath have been plagued with dust mites, unusually warm temperatures and non-ergonomically compliant workstations.

14. Lilly maintained a practice of hiring and promoting white males for contractor and management roles.

15. While employed at Lilly, Raghunath became the target of an all-white male management staff within GFD.

16. Upon information and belief, Lilly has interviewed and hired very few minorities within GFD.

17. The all-white male management staff within GFD at Lilly was described by its Senior Director, Donald Foley, a Caucasian male, as an "Old Boys Club."

18. Dan Franklin, a Caucasian male, was the lead manager for GFD at Lilly from 2002 to 2005.

19. Dick Knight, a Caucasian male, was the lead manager for GFD at Lilly from 2005 to 2012.

20. Scott Hamm, a Caucasian male, was the lead manager for GFD at Lilly from 2012 to mid-2014 up until Raghunath's departure from Lilly in April 2019.

21. Michael Shelton, a Caucasian male, was the lead manager for GFD at Lilly from 2015 to 2017.

22. Jason Duff, a Caucasian male, was the lead manager for GFD at Lilly from 2018 up until Raghunath's departure from Lilly in April 2019.

23. Bruce Beck, a Caucasian male, worked in a supervisory role of GFD at Lilly during relevant times of these matters, until 2015 at which time he took full retirement. Prior to 2015, Raghunath reported directly to Beck or Raghunath's direct supervisor reported to Beck.

24. There existed a pattern at Lilly where this all-white male management within GFD would contradict and misrepresent events involving Raghunath and Lilly policies.

25. Although he was informed on multiple occasions by his Lilly supervisors and peers that he was meeting or exceeding expectations and objective goals set for his performance, Raghunath routinely received poor performance reviews from Lilly management.

26. Upon information and belief, it was GFD management's goal to create a hostile work environment for the purpose of removing Raghunath from his role within the GFD or otherwise terminate his employment with Lilly as a result of their racial bias against Raghunath.

27. In May 2009, Raghunath made his first request for accommodation from Lilly for his health conditions.

28. In 2011, Lilly sent Raghunath to China for twenty-three (23) weeks, over the span of seven (7) trips, each being two (2) to five (5) weeks long, during which time Raghunath suffered a lower back injury and other health issues, which Raghunath promptly and repeatedly reported to Lilly management, Employee Health Service, Lilly Ergonomics, Lilly HR, Lilly's physician, Lilly's provided physical therapist, and Raghunath's personal physician. These seven (7) trips took place from approximately March to October, 2011.

29. Lilly failed to accommodate Raghunath's lower back injuries suffered during his employment with Lilly in China.

30. Despite his complaints about his lower back pain, Lilly forced Raghunath to sit and stand for long hours, which further exacerbated Raghunath's lower back issues.

31. In, or around, June 2014, Raghunath submitted a formal internal grievance with Lilly HR regarding racial discrimination against minorities.

32. Raghunath's complaints and grievances constituted statutorily protected conduct.

33. Following the submission of his complaint regarding racial discrimination, Lilly instituted a pattern of retaliation against Raghunath.

34. It became a custom during Raghunath's employment at Lilly for management staff to lie and make misrepresentations against Raghunath and retaliate against him for submitting complaints against Lilly.

35. Throughout his employment at Lilly, Raghunath was routinely assigned to projects which subjected him to health risks, including environmental factors, such as heat and dust mites, which triggered his Cholinergic Urticaria and environmental allergies. Raghunath's Caucasian coworkers were not assigned to similar projects or work conditions, despite them not having such health conditions.

36. Lilly routinely denied Raghunath's use of vacation time, especially when Raghunath was sent to support remote assignments, which further exasperated Raghunath's health issues. This was especially true during anniversary years when extra vacation time was awarded.

37. Lilly management created a double standard by repeatedly harassing Raghunath over his work expense reports even though several of Raghunath's Caucasian coworkers openly abused their work expenses with impunity.

38. As a result of Lilly's constant harassment of Raghunath's work expenses reports, Raghunath began paying for his own work expenses so as to avoid the harassment.

39. Raghunath was routinely denied bonuses and raises despite his good work performance, while his Caucasian coworkers were granted raises and bonuses without question.

40. Lilly repeatedly denied Raghunath's requests to attend conferences and professional development courses to improve his technical abilities, while Lilly routinely provided his Caucasian coworkers such opportunities.

41. Lilly tolerates the use of derogatory comments towards minority groups at its workplaces and allows such comments to go unpunished.

42. In August of 2018, Raghunath was told by Lilly management that he could no longer go to physical therapy.

43. Raghunath requested that he be permitted to work from home as a means of accommodating his health conditions. Although many of Raghunath's coworkers were permitted to work from home, Lilly denied Raghunath's request to do so.

44. On multiple occasions, Raghunath offered and applied to transfer to different positions which were lower paying so as to accommodate his health conditions, all of which were denied or ignored by Lilly.

45. During his last year and a half of employment at Lilly, Raghunath was assigned to a new job role as a technical writer, which he had not requested and which was a remedial and tedious role considering Raghunath's twenty-two (22) years of experience in engineering and project management.

46. On April 4, 2019, Lilly terminated Raghunath with the reason given as "unsatisfactory performance."

47. Raghunath met or exceeded expectations and objective goals and, upon information and belief, Lilly's stated reason for his termination as "unsatisfactory performance" was a pretext or mixed motive for Lilly to terminate Raghunath based on his race and/or national origin.

48. Upon information and belief, Lilly has adopted policies that permit discrimination against minority employees based on their race and/or national origin.

49. As a direct, legal, and proximate result of Lilly's acts and/or omissions, Raghunath has sustained significant economic and non-economic damages, including, but not limited to, emotional distress, lost opportunity, lost wages, and violations of his Constitutional rights.

50. Lilly's acts and/or omissions tarnished Raghunath's reputation and caused him to miss out on other opportunities.

51. Lilly's actions, false statements, and poor treatment of Raghunath was based on prejudice, racial preferences, ill will, maliciousness, and fell outside the prevailing cultural norms and values.

52. Lilly acted with oppression, malice, deliberate indifference, and/or willful and wanton recklessness.

### COUNT 1: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (FEDERAL LAW)

53. Raghunath incorporates and restates each of the above paragraphs as if fully set forth herein.

54. The Americans with Disabilities Act ("ADA") makes it unlawful to discriminate in employment against a qualified individual with a disability.

55. Raghunath is a qualified individual with a disability as defined in 42 U.S.C. § 12131(2).

56. Raghunath's disabilities, including back injuries and Cholinergic Urticaria, significantly limit and restrict the major life activities of performing engineering and management tasks, unless appropriate accommodation is provided.

57. Lilly intentionally discriminated against Raghunath in violation of the ADA by denying Raghunath's requests to accommodate his disabilities, including, but not limited to, his back injuries, environmental allergies, and sensitivity to heat.

58. Despite these disabilities, Lilly denied Raghunath's requests to work from home and forced Raghunath to work in environments which triggered his back injuries, environmental allergies, and Cholinergic Urticaria.

59. Raghunath was treated unequally by Lilly because of his disabilities.

60. Lilly could have reasonably accommodated Raghunath's disabilities.

61. Raghunath felt emotional distress for being treated differently Lilly, because of his disabilities.

62. Lilly's actions and/or omissions constituted a violation of the ADA and the equal protection clause of the Fourteenth Amendment of the United States Constitution.

63. Raghunath has suffered injuries and damages because of Lilly's conduct described above and prayers for relief as requested below.

## COUNT 2: STATE LAW DISABILITY DISCRIMINATION

64. Raghunath incorporates and restates each of the above paragraphs as if fully set forth herein.

65. The State of Indiana's Employment Discrimination Against Disabled Persons Act prohibits employment discrimination based on disability and applies to employers with 15 or more employees (I.C. § 22-9-5-19).

66. Raghunath is a qualified individual with a disability as defined in 42 U.S.C. § 12131(2).

67. Raghunath's disabilities, including back injuries and Cholinergic Urticaria, significantly limit and restrict the major life activities of performing engineering and management tasks, unless appropriate accommodation is provided.

68. Lilly intentionally discriminated against Raghunath by denying Raghunath's requests to accommodate his disabilities, including, but not limited to, his back injuries, environmental allergies, and sensitivity to heat.

69. Despite these disabilities, Lilly denied Raghunath's requests to work from home and forced Raghunath to work in environments which triggered his back injuries, environmental allergies, and Cholinergic Urticaria.

70. Raghunath was treated unequally by Lilly because of his disabilities.

71. Lilly could have reasonably accommodated Raghunath's disabilities.

72. Raghunath felt emotional distress for being treated differently by Lilly, because of his disabilities.

73. Lilly's actions and/or omissions constituted a violation of the State of Indiana's law against disability discrimination.

74. Raghunath has suffered injuries and damages because of Lilly's conduct described above and prayers for relief as requested below.

**COUNT 3: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN**

75. Raghunath incorporates by reference the preceding paragraphs of this complaint as fully set forth herein. Pursuant to the federal notice pleading standard, this complaint contains a factual allegations section, pleaded with sufficient factual matter, which demonstrates Raghunath is entitled to relief. Fed. R. Civ. P. 8(a)(2).

76. Over the course of his employment with Lilly, Raghunath met or exceeded Lilly's reasonable expectations.

77. Despite Raghunath's satisfactory work performance, Lilly continually criticized, harassed, humiliated, and demeaned Raghunath in a manner not visited upon similarly situated peers.

78. Lilly acted intentionally to discriminate against Raghunath when it denied his requests for accommodation of his disabilities, failed to grant Raghunath bonuses and raises, intentionally assigned Raghunath to undesirable work assignments, denied Raghunath's requests to attend conference and professional training courses, tolerated the use of racially insensitive comments by its employees, and issued groundless disciplinary actions against Raghunath.

79. Raghunath's Caucasian coworkers were not subjected to such negative treatment, and were generally provided guaranteed raises and bonuses, given more opportunities for professional advancement, provided opportunities to attend conferences and courses for professional development, given more desirable work assignments, and permitted to behave in their jobs with impunity.

80. Any reasons proffered by Lilly for its adverse actions towards Raghunath are pretext for discriminating against Raghunath on the basis of his race and national origin.

81. Lilly's acts and/or omissions towards Raghunath constitute unlawful and willful racial and national origin discrimination against Raghunath in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and Title VII of the Civil Rights Act of 1964 under 42 U.S.C. § 2000e *et seq*.

82. As a direct and proximate result of the above alleged willful and reckless acts and/or omissions of Lilly, Raghunath has suffered injury, including, but not limited to, lost wages,

diminished future earnings, mental/emotional pain and suffering, and he has incurred attorneys' fees.

### COUNT 4: VIOLATION OF INDIANA CIVIL RIGHTS ACT

83. Raghunath incorporates by reference the preceding paragraphs of this complaint as fully set forth herein. Pursuant to the federal notice pleading standard, this complaint contains a factual allegations section, pleaded with sufficient factual matter, which demonstrates Raghunath is entitled to relief. Fed. R. Civ. P. 8(a)(2).

84. The Indiana Civil Rights Act prohibits hiring practices that discriminate based on race, religion, color, sex, disability, national origin, ancestry, or status as a veteran. The Act covers employers with six or more employees (I.C. § 22-9-1-1 *et seq.*).

85. Over the course of his employment with Lilly, Raghunath met or exceeded Lilly's reasonable expectations.

86. Despite Raghunath's satisfactory work performance, Lilly continually criticized, harassed, humiliated, and demeaned Raghunath in a manner not visited upon similarly situated peers.

87. Lilly acted intentionally to discriminate against Raghunath when it denied his requests for accommodation of his disabilities, failed to grant Raghunath bonuses and raises, intentionally assigned Raghunath to undesirable work assignments, denied Raghunath's requests to attend conference and professional training courses, tolerated the use of racially insensitive comments by its employees, and issued groundless disciplinary actions against Raghunath.

88. Raghunath's Caucasian coworkers were not subjected to such negative treatment, and were generally provided guaranteed raises and bonuses, given more opportunities for professional advancement, provided opportunities to attend conferences and courses for

professional development, given more desirable work assignments, and permitted to behave in their jobs with impunity.

89. Any reasons proffered by Lilly for its adverse actions towards Raghunath are pretext for discriminating against Raghunath on the basis of his race and/or national origin.

90. Lilly's acts and/or omissions towards Raghunath constitute unlawful and willful racial and national origin discrimination against Raghunath in violation of the Indiana Civil Rights Act.

91. As a direct and proximate result of the above alleged willful and reckless acts and/or omissions of Lilly, Raghunath has suffered injury, including, but not limited to, lost wages, diminished future earnings, mental/emotional pain and suffering, and he has incurred attorneys' fees.

## COUNT 5: RETALIATION IN VIOLATION OF TITLE VII AND ADA

92. Raghunath incorporates by reference the preceding paragraphs of this complaint as fully set forth herein. Pursuant to the federal notice pleading standard, this complaint contains a factual allegations section, pleaded with sufficient factual matter, which demonstrates Raghunath is entitled to relief. Fed. R. Civ. P. 8(a)(2).

93. Over the course of his employment with Lilly, Raghunath met or exceeded Lilly's reasonable expectations.

94. Despite Raghunath's satisfactory work performance, Lilly continually criticized, harassed, humiliated, and demeaned Raghunath in a manner not visited upon similarly situated peers.

95. Lilly acted intentionally to discriminate against Raghunath when it denied his requests for accommodation of his disabilities, failed to grant Raghunath bonuses and raises, intentionally assigned Raghunath to undesirable work assignments, denied Raghunath's

   requests to attend conference and professional training courses, tolerated the use of racially insensitive comments by its employees, and issued groundless disciplinary actions against Raghunath.

96. Raghunath's Caucasian coworkers were not subjected to such negative treatment, and were generally provided guaranteed raises and bonuses, given more opportunities for professional advancement, provided opportunities to attend conferences and courses for professional development, given more desirable work assignments, and permitted to behave in their jobs with impunity.

97. As a result of this mistreatment, Raghunath submitted an internal grievance with Lilly for racial discrimination.

98. Raghunath's grievance constituted statutorily protected activity.

99. Following the submission of his complaint regarding racial discrimination, Lilly instituted a pattern of retaliation against Raghunath.

100. It became a custom during Raghunath's employment at Lilly for management staff to lie and make misrepresentations against Raghunath and retaliate against him for submitting complaints against Lilly.

101. Lilly's acts and/or omissions towards Raghunath constitute unlawful and will racial discrimination against Raghunath in violation of the of the equal protection clause of the Fourteenth Amendment of the United States Constitution, the ADA, and Title VII under 42 U.S.C. § 2000e *et seq*.

102. As a direct and proximate result of the above alleged willful and reckless acts and/or omissions of Lilly, Raghunath has suffered injury, including, but not limited to, lost wages,

diminished future earnings, mental/emotional pain and suffering, and he has incurred attorneys' fees.

### COUNT 6: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103. Raghunath incorporates by reference the preceding paragraphs of this complaint as fully set forth herein. Pursuant to the federal notice pleading standard, this complaint contains a factual allegations section, pleaded with sufficient factual matter, which demonstrates Raghunath is entitled to relief. Fed. R. Civ. P. 8(a)(2).

104. Lilly acted intentionally against Raghunath when it denied his requests for accommodation of his disabilities, intentionally assigned Raghunath to undesirable work assignments which triggered Raghunath's medical conditions, tolerated the use of racially insensitive by its employees, and issued groundless disciplinary actions against Raghunath.

105. Lilly's acts and/or omissions constituted extreme and outrageous conduct that constitutes intentional or reckless harm to Plaintiff.

106. As a direct, legal, and proximate result of Lilly's intentional infliction of emotional distress, Raghunath suffered economic and non-economic damages.

### PRAYER FOR RELIEF

107. Raghunath prays that a judgment be entered on his behalf and against Lilly on all Counts of this Complaint that:

   A. Awards actual and compensatory damages to Raghunath, including reasonable attorney's fees and any and all litigation costs incurred in this matter under 42 U.S.C. § 3613, 29 U.S.C. § 794a, and/or to the fullest extent of these laws and any all other applicable Constitutional violations;

   B. Awards any and all other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Raghunath hereby demands a trial by jury of all issues so triable.

Date: June 10, 2020   s/ Andrea Ciobanu_____
Andrea Ciobanu, Attorney #28942-49
CIOBANU LAW, P.C.
902 E. 66th Street
Indianapolis, IN 46220
Telephone: (317) 495-1090
Facsimile: (866) 841-2071
Website: ciobanulaw.com
Email: aciobanu@ciobanulaw.com